IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PROSPERITY MORTGAGE COMPANY, :

    Plaintiff, :

v. :

                                                    Civil Action No. GLR-12-2004

CERTAIN UNDERWRITERS AT :
LLOYD'S, LONDON, et al.,
                                  :

    Defendants.
                                    :

**MEMORANDUM OPINION**

Pending before the Court are Defendant Aspen Specialty Insurance Company's ("Aspen") Motions for an Order of Interpleader (ECF No. 35) and for Judgment on the Pleadings (ECF No. 48). Also pending are Plaintiff Prosperity Mortgage Company ("Prosperity") and Third-Party Defendant Michelle Mathews'[1] ("Mathews") Motions to Permit Discovery from a Related Case or For Partial Consolidation. (ECF Nos. 56-57). The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons that follow, the Court will (1) grant Aspen's Motion for Judgment on the Pleadings, (2) deny as moot Aspen's Motion for an Order of Interpleader, and (3) grant the Motions to Permit Discovery from a Related Case or For Partial Consolidation.

---

[1] The Court notes that the correct spelling of Michelle's last name is Mathews, not Matthews.

## I. BACKGROUND[2]

Prosperity consists of a partnership between Walker Jackson Mortgage Corporation and Wells Fargo Ventures, LLC, doing business as Prosperity Mortgage Company. From July through September 2006, Brett and Hope Ripkin ("the Ripkins") utilized Prosperity's services for a home equity line of credit and/or mortgage for a new home. Approximately two years later, on July 10, 2008, the Ripkins, represented by G. Russell Donaldson ("Attorney Donaldson"), filed suit against Prosperity and others seeking damages for alleged faulty appraisals and high loan values ("Ripkin Litigation").

During settlement negotiations with the Ripkins in late 2010, Attorney Donaldson informed Prosperity and the other defendants that his new clients, Frank and Catherine Larocca ("the Laroccas"), also had claims related to the purchase and sale of their existing and new homes. The Laroccas utilized Prosperity's services from April through July 2006. Attorney Donaldson suggested that Prosperity and the other defendants enter into a settlement agreement with the Laroccas although they had not filed a lawsuit. Upon consideration of the proffer, Prosperity's counsel and representative consulted with counsel for Defendant Certain Underwriters at Lloyd's of London

---

[2] Unless otherwise noted, the facts are taken from Prosperity's Complaint and accepted as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

("Lloyd's"), Prosperity's insurer at the time, about the Laroccas' claims. Prosperity ultimately decided not to settle with the Laroccas, but did reach a confidential settlement agreement with the Ripkins in December 2010. The Ripkin Litigation was dismissed with prejudice on March 21, 2011. The Laroccas had no further contact with Prosperity.

On or about October 12, 2011, Prosperity completed and submitted to Aspen a Mortgage Bankers Professional Liability, Mortgagee's E&O and/or Mortgage Bankers Fidelity Bond Application ("the Application"). (Aspen's Countercl. ¶ 13, ECF No. 18). Question 63 of the Application asked Prosperity whether it had "knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim(s), suit(s), investigation(s) or action(s)." (Aspen's Answer Ex. A, at 48,[3] ECF No. 18-1). Prosperity answered in the negative. (Id.) Question 68 asked Prosperity to identify "any claim(s), suit(s), demands for arbitration, or administrative/regulatory actions" that were pending at the time of, or prior to, the Application. (Id. at 49). Prosperity identified three actions in response to this question, but did not include the Laroccas' settlement attempts. (Id. at 49-50). Based upon Prosperity's responses, Aspen accepted the

---

[3] All citations to court documents in this Memorandum Opinion refer to CM-ECF pagination.

3

Application and issued Prosperity a Mortgage Bankers and Mortgage Banker Professional Liability Insurance Policy (the "Policy") as well as a Mortgage Bankers Fidelity Bond (the "Bond") (collectively, the "Policies") for the period between December 2011 and December 2012. (Aspen's Countercl. ¶¶ 2-3, 14). Aspen mailed the Policies to Prosperity's Chantilly, Virginia address. (Id. ¶ 16).

On December 9, 2011,[4] Attorney Donaldson filed a putative class action law suit against Prosperity as well as some additional defendants, including Prosperity's loan officer Mathews, on behalf of the Laroccas and two additional couples–Mehdi Nafisi and Forough Iranpour ("the Nafisi/Iranpours"), and Kenneth and Angela Pfeifer ("the Pfeifers") ("the Howard County Litigation"). According to Prosperity, the claims and theories asserted in the Howard County Litigation differ from those set forth in the Ripkin Litigation.

On July 5, 2012, Prosperity filed suit against Aspen and Lloyd's seeking declaratory relief and damages for the insurers' failure to defend and indemnify Prosperity against the claims raised in the Howard County Litigation. (ECF No. 1). On December 26, 2012, Aspen filed its Answer and Counterclaim

---

[4] The Complaint alleges that this date is December 8, 2011. (See Compl. ¶ 17, ECF No. 1). The case citation Prosperity provides, however, indicates that the correct date is December 9, 2011. (See id.)

4

seeking, inter alia, rescission of the Policies and declaratory relief against Prosperity. (ECF No. 18). The same day, Aspen also filed a Third-Party Complaint against Mathews. (ECF No. 19). Prosperity filed its Answer to Aspen's Counterclaim on January 16, 2013, and Mathews filed the same on February 22, 2013. (ECF Nos. 29, 37). On February 21, 2013, Aspen filed the pending Motion for an Order of Interpleader (ECF No. 35), and, on April 1, 2013, filed the pending Motion for Judgment on the Pleadings (ECF No. 48). Prosperity and Mathews filed the pending Motions to Permit Discovery from a Related Case or For Partial Consolidation ("Consolidation Motions") on June 18 and 19, 2013, respectively. (ECF Nos. 56-57).

## II. DISCUSSION

### A. Motion for Judgment on the Pleadings

#### 1. Standard of Review

Aspen moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed, as long as it is early enough not to delay trial. A Rule 12(c) motion is governed by the same standard as motions made pursuant to Rule 12(b)(6). Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009)(citation omitted). Thus, "the factual allegations of the complaint are taken as true, but those of the answer are taken as true only where and to the

5

extent they have not been denied or do not conflict with the complaint." Pledger v. N.C. Dep't of Health & Human Servs., Dorothea Dix Hosp., 7 F.Supp.2d 705, 707 (E.D.N.C. 1998) (citation omitted). Any document attached as an "exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c).

Finally, "[j]udgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." Rock for Life-UMBC v. Hrabowski, 594 F.Supp.2d 598, 605 (D.Md. 2009) (citation omitted).

**2. Analysis**

The Court holds that Aspen is entitled to judgment as a matter of law because, under Virginia law, Prosperity's failure to identify the Laroccas' claims in the Application constitutes a material misrepresentation, omission, or concealment that renders the Policies void.

    a.   Choice of Law

Of particular import to the Court's analysis of Aspen's Motion is a determination regarding the substantive state law the Court must apply. Both the Policy and Bond at the center of this litigation fail to provide a choice of law provision. In light of the Policies' omission of a definitive provision and

6

the application of Maryland choice of law rules, the Court finds that Virginia law applies.

It is axiomatic that federal courts exercising diversity jurisdiction over a matter "apply the choice of law rules of the forum state . . . ." CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (citation omitted). In Maryland, the doctrine of lex loci contractus applies when interpreting insurance contracts. See Allstate Ins. Co. v. Hart, 611 A.2d 100, 101 (Md. 1992). Under this doctrine, the court applies the substantive law of the state where the contract was made to determine its validity and construction. Id. Normally, a contract is "made where the last act necessary to make the contract binding occurs." Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pitts., Pa., 893 F.Supp.2d 715, 725 (D.Md. 2012) (citation omitted). In the insurance context, "delivery of the policy and payment of the premium are ordinarily the last acts necessary to make an insurance policy binding." Id. (citation omitted). Where an insurance policy provides an express provision regarding the necessity of a countersignature, however, that countersignature becomes the "last act necessary to effectuate the policy." Id. at 725-26 (citations omitted).

Aspen avers that Virginia law applies because it delivered the policy to Prosperity's office in Chantilly, Virginia.

Conversely, Prosperity avers that Maryland law applies under the renvoi exception because the countersignatures constitute the final binding act. According to Prosperity, the countersignatures were either executed in Aspen's Illinois or New York offices, not Virginia. Neither of the policy provisions upon which Prosperity rely, however, contain an express countersignature provision.

The Policy contains the signature of Aspen's authorized representative. The statement above that signature reads: "IN WITNESS WHEREOF, the insurer has caused this policy to be signed on the Declarations by its duly authorized representative or countersigned in states where applicable." (Aspen's Answer Ex. A, at 3, ECF No. 18-1). Similarly, the statement above the signature on the Bond states: "In witness whereof, the Underwriters has caused this Bond to be executed on the Declarations page." (Id. Ex. B, at 38, ECF No. 18-2). Neither statement expressly provides that a countersignature is required for the policies to be valid.[5]

In fact, the statements differ from those in other cases where Maryland courts have found an express countersignature provision in the policy. See, e.g., Millennium, 893 F.Supp.2d at

---

[5] Moreover, the reference to a countersignature in the Policy is conditioned upon the act occurring in an "applicable" state. There's no indication whether that applies to the Policy.

726 ("this policy shall not be valid unless signed at the time of issuance by an authorized representative . . . ."); Rouse Co. v. Federal Ins. Co., 991 F.Supp. 460, 463 (D.Md. 1998) ("[T]he policy 'shall not be valid unless also signed by a duly authorized representative of the Company.'"); Eastern Stainless Corp. v. Am. Protection Ins. Co., 829 F.Supp. 797, 799 (D.Md. 1993) ("[T]his Policy shall not be valid unless countersigned by the duly authorized Agent of the Company."). Contrary to the aforementioned cases, there is nothing in the Policy language that intimates a countersignature bears on its validity. The Court finds that, absent this express language, the final act binding the contract was Aspen's delivery of the Policies to Prosperity's Virginia location. As a result, the Court will apply Virginia law to this Motion unless the limited renvoi exception requires otherwise.

When the lex loci contractus doctrine requires the court to apply the law of a foreign jurisdiction, Maryland courts can utilize the limited renvoi exception to determine whether the foreign jurisdiction would apply Maryland law. Am. Motorists Ins. Co. v. ARTRA Grp., Inc., 659 A.2d 1295, 1304 (Md. 1995).[6]

---

[6] Under this limited exception,

> Maryland courts should apply the Maryland substantive law to contracts entered into in foreign states' jurisdictions in spite of the doctrine of lex loci contractus when: (1) Maryland has the most significant

9

In such cases, the court is at liberty to apply Maryland law notwithstanding the doctrine of lex loci contractus. The renvoi exception does not warrant an application of Maryland law to this matter, however, because Virginia would apply her own substantive law. See, e.g., Black v. Powers, 628 S.E.2d 546, 554 (Va.Ct.App. 2006) ("It is a long-standing rule in Virginia that the nature, validity and interpretation of contracts are governed by the law of the place where the contract was made." (citations and internal quotation marks omitted)). As a result, Virginia law governs this coverage dispute.

b. The Policies Are Void

The Court grants Aspen's Motion for Judgment on the Pleadings because it is entitled to rescission of the Policy and Bond. Specifically, Prosperity's failure to identify the Laroccas' claims in the Application constitutes a material misrepresentation, omission, or concealment that renders both documents void.

In Virginia, "an insurer can rescind an insurance contract for misrepresentation of a material fact in applying for

---

    relationship, or, at least, a substantial relationship
    with respect to the contract issue presented; and (2)
    The state where the contract was entered into would
    not apply its own substantive law, but instead would
    apply Maryland substantive law to the issue before the
    court.

Id.

insurance." Cont'l Cas. Co. v. Graham & Schewe, 339 F.Supp.2d 723, 727 (E.D.Va. 2004) (citation omitted). An insurance carrier who seeks to void a policy on the basis of an insured's alleged material omissions or misrepresentations must show by clear proof "(1) that the statement or omission on the application was untrue; and (2) that the insurance company's reliance on the false statement or omission was material to the company's decision to undertake the risk and issue the policy." Montgomery Mut. Ins. Co. v. Riddle, 587 S.E.2d 513, 515 (Va. 2003). Moreover, in illustrating materiality, the insurer must show that it relied upon the omission or misrepresentation when deciding to issue the policy. Id. Merely offering the language of the policy itself to support an inference of materiality is insufficient. Cont'l Cas., 339 F.Supp.2d at 728-29 (citing Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C., 540 S.E.2d 491, 493 (Va. 2001)). The Court holds that, as a matter of law, Prosperity had knowledge of acts that could reasonably be expected to be the basis of a claim against it when Prosperity completed the Application.

Aspen identifies two questions in the application to which Prosperity should have identified the Laroccas' claims; Questions 63 and 68. The questions read as follows:

> Question 63 - Does any person or entity proposed to be insured have knowledge or information of any act, error or omission which might

11

> reasonably be expected to give rise to a claim(s), suit(s), investigation(s) or action(s) under a Professional Liability Policy, Mortgagee's E&O Policy and/or Fidelity Bond Policy?
>
> Question 68 - Have there been or are there now pending, any claim(s), suit(s), demands for arbitration, or administrative/regulatory actions(s) [sic] (including, but not limited to, any investigation) against any past or present person or entity proposed for insurance under the proposed coverage forms in connection with mortgage lending products, practices or activities?

(Aspen's Answer Ex. A, at 48-49, ECF No. 18-1).

As a preliminary matter, Prosperity avers that the Policy definitions of "claim" and "suit" do not require disclosure of the Laroccas' 2010 activity in response to Question 68. Aspen, focusing solely on the term "claim," counters that the Policy definition does not apply because, at the time of the Application, Aspen had not yet issued the Policy[7] and the Application does not state that its terms are the same as those issued in the Policy.

Because "claim" is not defined in the Application, the Court applies its ordinary and customary meaning.[8] See <u>Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co.</u>, 397 S.E.2d 876, 877 (Va. 1990). Under this standard, a "claim" is a "demand for

---

[7] This contradicts Prosperity's contention that it consulted the Policy definitions when completing the Application. (<u>See</u> Prosperity's Opp'n at 21, ECF No. 51).

[8] The Court focuses solely on "claim" because it is the only term that is in dispute.

something as rightful or due." The American Heritage Dictionary 340 (5th ed. 2011); see also Black's Law Dictionary 281-82 (9th ed. 2009) (defining "claim" as a "demand for money, property, or a legal remedy to which one asserts a right"). This plain meaning is similar to the definition provided in the Policy. (See Aspen's Answer Ex. A, at 7-8).[9]

It is undisputed that at the time the Laroccas sought participation in the Ripkins' settlement negotiations, the Laroccas had not yet filed suit against Prosperity. Therefore, the Laroccas' attempt to engage in settlement negotiations with Prosperity would have to be construed as a "demand" to require Aspen's disclosure of the activity on the Application. This interpretation is not determinative, however, because the Laroccas' settlement attempts are responsive to Question 63, which requires Prosperity to disclose "knowledge or information of any act, error or omission which might ***reasonably be expected to give rise*** to a claim(s), suit(s), investigation(s) or action(s)." (See Aspen's Answer Ex. A, at 48) (emphasis added).

Virginia applies an objective standard to an insured's prior knowledge, "asking whether a reasonable person in possession of the facts known to the insured, would have had a

---

[9] In fact, the only portion of the Policy definition that does not include the term "claim" are the first two prongs, which define "claim" as "(1) a written demand for money or services . . . [and] (2) a suit." (Id.)

reasonable basis to know that a claim might be made."[10] Cont'l Cas., 339 F.Supp.2d at 727 (citation omitted). Prior to completing the Application for insurance coverage, Prosperity had knowledge of activity that might reasonably give rise to a claim.

Around December 2010, Attorney Donaldson, counsel for the plaintiffs in the Ripkin Litigation, informed Prosperity that he acquired the Laroccas as clients and attempted to include them in the Ripkins' settlement discussions. (Compl. ¶¶ 12, 14). Although Prosperity ultimately declined to enter into a settlement agreement with the Laroccas (see Compl. ¶ 16; Aspen's Answer Ex. H, at 2, ECF No. 18-8), Prosperity acknowledges that it "first became aware that the Laroccas had unspecified mortgage-related claims against Prosperity in December 2010." (Aspen's Answer Ex. H, at 3). Therefore, when Prosperity completed the Application in 2011, it not only knew that the Laroccas alleged claims against it, but also that those claims were unresolved. Ergo, as a matter of law, Prosperity was aware

---

[10] Aspen's averment regarding the intentions of Glen Phillips when he completed the Application is irrelevant under this standard. This standard does not evaluate the applicant's intent to misstate the facts. Conversely, courts apply a subjective standard when the application asks that the question be answered to the best of the applicant's knowledge and belief. See, e.g., Parkerson v. Fed. Home Life Ins. Co., 797 F.Supp. 1308, 1315-17 (E.D.Va. 1992) ("[W]here state of mind is at issue, the non-moving party's subjective state of mind must be reasonable in light of the objective facts.").

14

of facts that could reasonably be expected to give rise to a claim against it.

Contrary to Prosperity's averments, it is of no consequence that Prosperity was unaware of the specific claims the Laroccas had against it because it knew the claims were "mortgage-related." Moreover, Prosperity's decision not to include the Laroccas in the Ripkins' settlement discussions and its belief that the Laroccas had unsubstantiated claims are not dispositive under the objective standard. The only question is whether Prosperity had possession of facts that gave it a "reasonable basis to know that a claim might be made." Cont'l Cas., 339 F.Supp.2d at 727 (citation omitted). The Court finds that, at the time of the Application, Prosperity had a reasonable basis to know that the Laroccas might continue to pursue their claims despite Prosperity's view of their validity.

Aspen's ability to void the Policy and Bond due to Prosperity's failure to identify the Laroccas' claims in the Application, however, depends upon whether the omission was material to Aspen's decision to issue the Policies. Prosperity's omission is "material" if "truthful answers would have reasonably influenced [Aspen's] decision to issue the policy." Montgomery Mut., 587 S.E.2d at 515.

Although Aspen avers that the plain language of the Policy explicitly makes Prosperity's omission and misrepresentations

15

material,[11] this evidence alone is insufficient. See Cont'l Cas., 339 F.Supp.2d at 728-29. In its Counterclaim, however, Aspen alleges that "had Aspen Specialty known about the Laroccas' claims . . . it would not have agreed to issue the Aspen Specialty Policy, or would not have issued the Policy on the same terms and conditions, or for the same premium." (Aspen Countercl. ¶ 68; see also id. ¶ 82). Therefore, Prosperity's answers influenced Aspen's decision to issue the Policy and Bond.

Prosperity avers that it is not seeking coverage for the Laroccas' claims because it already sought coverage from Lloyd's in 2010. (Prosperity's Opp'n at 17). There is, however, no indication of such division in the pleadings. Prosperity's Complaint consistently references the Laroccas' claims with that of the Nafisi/Iranpours and the Pfeifers.[12] (See, e.g., Compl. ¶¶ 1, 34-35, 39, 43, & 54). The Complaint also alleges that "each Defendant" is responsible for Prosperity's defense and litigation costs. (See id. ¶¶ 25-26, 31-32). Moreover, the correspondence between Aspen and Prosperity repeatedly consolidate the claims. (See Aspen's Answer Exs. E-H). Even if

---

[11] The Policy states, in relevant part: "All the statements and representations in the **application** are deemed to be material to the risk assumed by the **insurer**, form the basis of this policy, and are incorporated into and have become a part of this policy." (Aspen's Answer Ex. A, at 30) (bold in the original).
[12] Indeed, the very nature of a putative class action lawsuit requires the claims to be interrelated.

16

the pleadings did support Prosperity's assertion, the argument would still fail because the plain language of the Policy provides for rescission upon the discovery of a material misrepresentation or omission. (See Aspen's Answer Ex. A, at 30) ("Any misrepresentation, omission, concealment or incorrect statement of a material fact, in the **application** or otherwise, shall render this policy void in its entirety.") (bold in the original).

Accordingly, Aspen is entitled to judgment as a matter of law because Prosperity's failure to identify the Laroccas' claims in the Application constitutes a material misrepresentation, omission, or concealment that renders the Policy and Bond void.[13]

**B.  Consolidation Motions**

Also pending before the Court are Prosperity and Michelle Mathews' Motions to Permit Discovery from a Related Case or For Partial Consolidation. (ECF Nos. 56-57). Upon consideration of the pleadings and Aspen's recent disposition in this case, the Court GRANTS the Motions. Specifically, the Court permits Prosperity to use the discovery obtained in Certain Underwriters at Lloyd's, London v. Wells Fargo Ventures, LLC, et al., Case No. 1:13-cv-00080-GLR, in this matter.

---

[13] As a result, Aspen's Motion for an Order of Interpleader (ECF No. 35) will be denied as moot.

## III. CONCLUSION

For the aforementioned reasons, the Court GRANTS Aspen's Motion for Judgment on the Pleadings (ECF No. 48), and DENIES AS MOOT Aspen's Motion for an Order of Interpleader (ECF No. 35). Furthermore, Prosperity and Michelle Mathews' Motions to Permit Discovery from a Related Case or For Partial Consolidation (ECF Nos. 56-57) are GRANTED. A separate Order follows.

Entered this 15th day of July, 2013.

_____/s/_____
George L. Russell, III
United States District Judge